IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| WARREN TEEL, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:13-CV-485-Y |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**OPINION AND ORDER**

Before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Warren Teel, a state prisoner, against William Stephens, director of the Texas Department of Criminal Justice, Correctional Institutions Division, Respondent. The prior referral to the magistrate judge is withdrawn.

After having considered the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

I. Factual and Procedural History

On May 7, 2009, in the 396th Judicial District Court, Tarrant County, Texas, a jury found Petitioner guilty of aggravated robbery with a deadly weapon, a furniture leg or post; Petitioner pleaded true to a habitual-offender notice in the indictment; and the jury assessed his punishment at 99 years' confinement and a $10,000

fine. (J. of Conviction by Jury 100, ECF No. 11-9.) Petitioner appealed his conviction, but the Second Court of Appeals of Texas affirmed the trial court's judgment and the Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review. (Mem. Op., ECF No. 11-5; *Thurman v. State*, PDR No. 1805-11.)

The state appellate court set forth the relevant facts of the case as follows:

> Teel was charged with committing aggravated robbery with a deadly weapon after he approached a woman at a gas station on May 9, 2008; asked her for money; got into her car; and started beating her with a wooden post. He also bit her while trying to take her keys. He took her purse and left.
>
> On July 22, 2008, Dr. Barry Norman conducted a court-ordered competency examination. Dr. Norman diagnosed Teel with schizoaffective disorder with psychosis and mixed substance abuse and opined that Teel was not competent to stand trial. The trial court ordered Teel confined to a state hospital until he regained competence. Several months later, a doctor at North Texas State Hospital filed with the court a report stating that Teel was competent to stand trial. The trial court entered a judgment of mental competency, and Teel's attorney filed a notice of intent to raise the insanity defense.
>
> Before trial, the State objected to Teel's proposed admission of Dr. Norman's testimony on the basis of relevance, and Teel made a proffer of Dr. Norman's testimony. Dr. Norman opined that, as of his examination of Teel on July 22, 2008, Teel was suffering from schizoaffective disorder and was responding to auditory hallucinations, was not oriented as to time and place, and did not know where he was or what was going on. At the end of his examination, he concluded Teel was not competent to stand trial.
>
> On cross-examination by the State, Dr. Norman explained the difference between a competency examination and a sanity examination,[2] and he stated that he did not perform a sanity

2

examination in this case. He testified that all of his opinions pertained to Teel's status as of July 22, 2008-not May 9, 2008-and that he did not have an opinion as to Teel's sanity as of May 9, 2008. The trial court sustained the State's objection and excluded Dr. Norman's testimony.

> [2]Dr. Norman testified that a competency examination involves determining whether a defendant has the ability to speak and interact with his attorney, to attend courtroom proceedings, and to understand what is going on in a courtroom. In contrast, a sanity examination has to do with whether a defendant was suffering from a debilitating illness at the time of the alleged offense such that he could not understand that his conduct was wrong.

(Mem. Op. 2-3; ECF No. 11-5.)

## II. Issues

In one ground, Petitioner claims that his 5th, 6th and 14th Amendment rights were violated and that the trial court abused its discretion by excluding Dr. Norman's testimony. (Pet. 6, ECF No. 1.) According to Petitioner, he-

> sought the assistance of Dr. Norman['s] testimony so that he could provide scientific[-]based study regarding individuals that suffer[] from Teel's mental disease or defect by providing the jury with a vivid picture of changes and stages these individuals undergo while not being treated for this illness and further provide fact evidence regarding these individual's behavior pattern and their ability to understand the nature of their conduct.
>
> Teel's trial counsel timely filed notice of intent to raise an insanity defense contending that Teel was not sane at the time he committed the underlying offense. The elements of the defense are simple. Teel must show that he was suffering from a severe mental disease or defect. He must then prove causation: that he was unable to know that his conduct was "wrong" as a result of that

3

condition. He must prove both elements by a preponderance of the evidence.

The procedural requirements is [sic] that once the trial court have [sic] been made aware of the intent to raise an insanity defense – by and through motion of either parties [sic] or on the trial court's own motion – shall be issued to examine Teel and report back to the court in thirty (30) days. Teel was not afford[ed] such examination.

In this case, on July 22, 2008, Teel was examined by Dr. Norman, who was chief psychologist at Rusk State Hospital. Dr. Norman testified that he had been qualified as an expert to testify to both competency and sanity hearings in state courts. In regards to the examination he conducted on Teel, he opined that Teel suffered from schizo-affective disorder and was responding to auditory hallucinations, that he was not oriented as to time and place, and didn't really know where he was or what was going on.

Because Dr. Norman testified that he did not conduct a sanity examination on Teel as to his mental state at the time of the offense, this is the reason as to why the trial court excluded Dr. Norman's testimony. This is an abuse of discretion because Teel was denied his constitutional right to present a defense and have favorable witness to testify in his behalf. Dr. Norman would have provided both through his testimony.

Teel contends that Dr. Norman's testimony would have been "relevant" evidence and such evidence would have had a tendency to make the existence of any fact that is of consequence to determination of the insanity defense at the time of the offense more probable than it would without the evidence. While expert testimony is not necessary to entitle a defendant to an instruction on the insanity defense, juries are rarely convinced without it.

Two and a half months after the offense, the trial court issues an Order for Teel to be examined to determine whether he was competent to stand trial. Teel was examined by Dr. Barry Norman on July 22, 2008. Dr. Norman reported back to the trial court that Teel suffered from "schizoaffective disorder and was responding to auditory hallucination, that he was not orient[ed] as to time place, and didn't really know where

4

> he was or waht [sic] was going on." Teel was diagnosed as incompetent to stand trial and was transferred to a mental health faci8lity. Teel was under treatment at the time of Dr. Norman's examining him. After seven (7) months of extensive treatment, Teel was deemed competent to stand trial.
>
> It was Teel's intent to present an insanity defense that he did not understand that his conduct was wrong at the time of the offense. Teel needed the favorable testimony of Dr. Norman to provide the scientific based studies by both defining his mental deseases [sic] and defects along with their symptoms and behavior pattern when treated and untreated. This fact evidence applied to similar documented case study by giving the jury a cohesive understanding and vivid picture of the struggles Teel suffered because of his mental conditions and liability for his actions.
>
> After hearing the testimony of Teel's mother testifying Teel spent 5 years in a mental ward and was on 10-12 different medications to treat his condition coupled by Teel's testimony that **he was not "wrong"** to fight with Ms. Siford, the complainant. And the fact that Teel had been admitted three times to the JPS psychiatric ward for treatment since his release from the penal system.
>
> The testimony of Dr. Norman would have provided the scintilla of eveidence [sic] needed to warrant the insanity at the time of the offense instruction. The fact issue would have been left to the jury to believe of [sic] disbelieve this evidene [sic]. The jury was not afford[ed] an opportunity to consider these facts in its verdict, and might have.

(Pet. 6-6d, ECF No. 1 (citations to the record omitted) (emphasis in original).)

III. Legal Standard for Granting Habeas-Corpus Relief

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a

writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established Supreme Court precedent or that is based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter,* 131 S. Ct. 770, 785 (2011); 28 U.S.C. § 2254(d)(1)-(2). This standard is difficult to meet but "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington,* 131 S. Ct. at 786.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. This presumption of correctness applies to both explicit findings of fact and those findings of fact implicit in the state court's mixed-law-and-fact conclusions. *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001). The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003); *Williams v. Taylor,* 529 U.S. 362, 399 (2000).

Finally, when faced with a silent or ambiguous decision by the state's highest criminal court, such as the Texas Court of Criminal Appeals' decision in this case, the federal habeas court must "look

6

through" to the last clear state decision on the matter to determine which state court decision to review. *Jackson v. Johnson*, 194 F.3d 641, 651 (5th Cir. 1999). In this case, the last reasoned opinion was that of the Second Court of Appeals', and so it is that opinion to which this Court applies AEDPA's standards.

IV. Discussion

In rejecting Petitioner's claim and relying solely on Texas Rule of Evidence 401 and Texas case law, the Second Court of Appeals addressed Petitioner's claim as follows:

> In his sole issue, Teel complains that the trial court abused its discretion by excluding Dr. Norman's testimony because it was relevant, was probative, and would have assisted the jury in determining an ultimate issue of fact, i.e., whether Teel was insane. Specifically, he argues that Dr. Norman's testimony would have "provided a 'small nudge' in proving or disproving a fact of consequence to the trial" and that by excluding Dr. Norman's testimony, the trial court violated Teel's due process right to present his defense.
>
> A. Standard of Review
>
> We may not disturb a trial court's evidentiary ruling absent an abuse of discretion. In other words, as long as the trial court's decision was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it must be upheld. This is so because "trial courts . . . are usually in the best position to make the call on whether certain evidence should be admitted or excluded."
>
> [Under Texas Rule of Evidence 401,] "[r]elevant evidence" means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "[E]xpert testimony that does not directly rebut the culpable mental state usually may be excluded at the

7

> guilt stage. The test for determining insanity is whether, at the time of the conduct charged, as a result of mental disease or defect, the defendant did not know his conduct was wrong. In this context, "wrong" means "illegal."
>
> **B. Analysis**
>
> Teel refers us to *Fisher-Riza v. State,* arguing that his due process rights were violated when he was prohibited from presenting Dr. Norman's testimony.
>
> We note first that *Fisher-Riza* is inapposite, as the court addressed expert testimony about *past* mental illness and held that testimony about a defendant's mental health five years prior to the instant offense was not too remote. Here, Dr. Norman did not testify about Teel's past mental health during the proffer, and he specifically testified that he was unaware of Teel's mental health status on the date of the incident at issue. Further, he stated that he did not conduct a sanity examination at the time he evaluated Teel's competency to stand trial and that he had no opinion about Teel's state of mind—sanity or mens rea—on the date Teel committed the instant offense. Rather, he testified about Teel's lack of mental competence to stand trial over a month after the commission of the offense. Under the circumstances here, we cannot say that the trial court abused its discretion by excluding Dr. Norman's testimony during the guilt-innocence phase of trial.

(Mem. Op. 3-6, ECF No. 11-5 (footnotes omitted).)

A criminal defendant has the right to a fundamentally fair trial and to present a defense. U.S. CONST., amends. V, VI, XIV; *Crane v. Kentucky,* 476 U.S. 683, 690-91 (1986); *Chambers v. Mississippi,* 410 U.S. 284, 294 (1973); *Washington v. Texas,* 388 U.S. 14, 19 (1967). However, a federal habeas court's review of state-court evidentiary rulings "is limited to determining whether a trial judge's error is so extreme that it constituted a denial of fundamental fairness." *Jackson v. Johnson,* 194 F.3d 641, 656 (5th

8

Cir. 1999). Relief will be warranted only when the excluded evidence "is a crucial, critical, highly significant factor in the context of the entire trial." *Johnson v. Puckett*, 176 F.3d 809, 821 (5th Cir. 1999).

Under Texas law, "[t]here is a general presumption of sanity and the defendant bears the burden of proving, by a preponderance of the evidence, his insanity at the time of the conduct charged." *Martinez v. State*, 867 S.W.2d 30, 33 (Tex. Crim. App. 1993). He must demonstrate that "as a result of severe mental disease or defect," he did not know his conduct was wrong. TEX. PENAL CODE ANN. § 8.01 (West 2011). Dr. Norman did not perform an insanity examination and had no opinion as to petitioner's sanity at the time of the offense. (Reporter's R., vol. 4, 15, ECF No. 11-11.) Therefore, any testimony regarding Petitioner's mental illness in an effort to support an inference that his condition rendered him unable to appreciate the nature or wrongfulness of his actions at the time he committed the offense was properly excluded as irrelevant. *United States v. Eff*, 524 F.3d 712, 717-18 (5th Cir. 2008). The fact that Petitioner was deemed incompetent to stand trial as a result of the competency examination would not have been helpful to the jury in deciding whether he was insane when he committed the offense. Further, Petitioner's own court-appointed expert witness, Dr. Kelly Goodness, who did perform an insanity examination, apparently expressed the opinion that there was no

basis for an insanity defense. (Reporter's R., vol. 3, 10, ECF No. 11-10 & vol. 5, 13, ECF No. 11-12.)

## V. Conclusion

Based on the record before the Court, the state courts' rejection of Petitioner's claims is not contrary to, or involve an unreasonable application of, clearly established Supreme Court precedent nor was the decision based on an unreasonable determination of the facts in light of the evidence presented in state court.

For the reasons discussed, the Court DENIES Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and DENIES a certificate of appealability.

SIGNED October 20, 2014.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE